# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:23-CV-00068-SCR

| | | |
|---|---|---|
| CHRISTAN FREUDENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SERVCON, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff Christan Freudenberg's (the "Plaintiff")
Motion for Summary Judgment (Doc. No. 13) and Defendant Servcon, LLC's (the "Defendant")
Motion for Summary Judgment submitted (Doc. No. 14) (together, the "Motions"), as well as the
parties' associated briefs and exhibits.

The parties have consented to Magistrate Judge jurisdiction pursuant to 29 U.S.C. § 636(c).
The Motions are now ripe for the Court's consideration. After fully considering the arguments,
the record, and the applicable authority, the Court <u>denies</u> both Motions.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

Plaintiff filed this action on February 6, 2023, against her former employer alleging
discrimination, retaliation, and failure to pay overtime wages. (Doc. No. 1). Specifically,
Plaintiff's Complaint brings claims against Defendant for: (1) Failure to Provide a Reasonable
Accommodation in Violation of the Americans with Disabilities Act ("ADA"); (2) Retaliation in
Violation of the ADA; (3) Unlawful Discrimination in Violation of Pregnancy Discrimination Act

("PDA"); (4) Unlawful Retaliation in Violation of the PDA; and (5) Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act ("FLSA").

The parties have now filed cross-motions for summary judgment. Defendant moves for summary judgment on all of Plaintiff's claims. Plaintiff moves for summary judgment on her FLSA claim.

**B. Factual Background**

1. <u>The Service Manager Position</u>

Defendant is a facilities management company located in Charlotte, North Carolina, with approximately 23 employees. (Doc. No. 14-2 ¶ 2). As a facilities management company, Defendant is hired by customers, such companies operating retail stores, to maintain hundreds of its customer's physical facilities throughout the United States. (Doc. No. 14-2 ¶ 3; Doc. No. 13-5 at 43:19-44:15). For example, if Defendant's customer with a retail store has a broken window, Defendant is hired to locate a local subcontractor to do the repair work, including an emergency board up of the window as needed. (Doc. No. 14-2 ¶¶ 3-5; Doc. No. 13-5 at 43:2-23, 50:8-51:7, 202:12-204:4).

Defendant hired Plaintiff in November 2021, as a service manager. (Doc. No. 14-2 at 8-9; Doc. No. 13-6). In that position, Plaintiff earned $38,000 annually, plus certain commissions. (Doc. No. 13-6; Doc. No. 13-5 at 41:5-42:11; Doc. No. 14-2 ¶¶ 6, 8, 11). As a service manager, Plaintiff acted as a liaison between Defendant's customers and local contractors performing services needed at customer's facilities. (Doc. No. 13-5 at 43:9-23; Doc. No. 14-2 ¶¶ 4-5). According to Defendant, service managers, including Plaintiff, exercise independent judgment and discretion while performing these tasks. (Doc. No. 14-2 ¶¶ 5, 12).

In her position, Plaintiff was expected to work at the Defendant's Charlotte office Monday

through Friday, from 8:00 a.m. to 5:00 p.m.  (Doc. No. 13-6; Doc. No. 14-2 ¶ 7; Doc. No. 14-2 at 8-9).  According to her offer letter, Plaintiff was also required to do "[w]eekend work and emergency work . . . at specific times with variable compensation."  (Doc. No. 13-6; Doc. No. 14-2 at 8-9; Doc. No. 14-2 ¶ 7; Doc. No. 13-5 at 46:13-21).  Plaintiff agrees that part of her role as a service manager working included at times responding to calls on nights and weekends for emergency work.  (Doc. No. 13-5 at 46:4-21; Doc. No. 13-4 ¶¶ 9, 18-19).

2. <u>Plaintiff's Performance</u>

The parties dispute whether Plaintiff had performance issues or was performing her job satisfactorily while employed.  According to Defendant, during Plaintiff's tenure of November 2021 to February 2022, Plaintiff had "ongoing performance issues that included tardiness and punctuality, attention to detail, and insubordinate behavior including a poor attitude and demeanor," which did not improve and affected other employees.  (Doc. No. 14-2 ¶¶ 13-15). Plaintiff disputes this and asserts that she performed her job satisfactorily including at the time of her termination.  (Doc. No. 18 at 9).  Defendant also contends that Plaintiff requested time off for health-related matters at least seven times and had at least 22 absences "due to sickness."  (Doc. No. 14-2 ¶ 17; Doc. No. 17-1 ¶ 6).

On January 18, 2022, Plaintiff was placed on a 10-day performance improve plan ("PIP"). (Doc. No. 14-2 ¶ 14; Doc. No. 18-4)  This PIP outlined five "Goals and Expectations Related to Areas of Concern" as follows:

| Goals and Expectations Related to Areas of Concern | Start Date | Checkpoint Date | Projected Completion |
|---|---|---|---|
| 1. Ability to fill out the TS, worksheets, and portals, with accurate notes, financials, and documents (in real time). <br> --Fully comply with all processes & procedures in accordance with running a job/project | 1/18/22 | Twice Daily. | 2/4/22 |
| 2. Starting new jobs and sourcing within (2) hours of the job being assigned per Servcon Service Standards | 1/18/22 | Twice Daily. | 2/4/22 |
| 3. Dispatch (with Service Request/RFP) and Compliance Packet sent within 30 minutes of sourcing per Servcon Service Standards | 1/18/22 | Twice Daily. | 2/4/22 |
| 4. Fully comply with all job requests, urgencies & priority levels per the expected performance criteria of the performance agreement (with willingness and attitude awareness) | 1/18/22 | Twice Daily. | 2/4/22 |
| 5. Ability to obtain completion docs and move completed jobs to invoicing within 48 hours of completion. Review all docs before uploading. | 1/18/22 | Twice Daily. | 2/4/22 |

(Doc. No. 18-4). According to the PIP, Plaintiff's supervisor would review her progress on each item requiring improvement twice daily, and after the projected completion, her supervisor would schedule weekly follow-up evaluations with Plaintiff to monitor her performance. Id. at 3. The PIP also stated:

If any portion of this PIP is violated or improvements are not made during the specified probationary period, disciplinary action up to and including termination from SERVCON LLC may occur. As always, your supervisor is available to discuss any concerns you may have while working on this PIP.

Id. The PIP ended on February 4, 2022. The Court has no evidence that the PIP was continued after February 4, 2022, was otherwise not completed satisfactorily, that any disciplinary action was taken, or that Plaintiff was put on further formal performance related plans.

### 3. February 24, 2022 Meeting

In February 2022, Plaintiff was experiencing complications related to her pregnancy. (Doc. No. 13-5 at 197:12-198:12; Doc. No. 20-2 ¶ 8). On or about February 16, 2022, Plaintiff notified some of Defendant's employees about these complications in connection with her pregnancy. (Doc. No. 13-5 at 197:12-198:12). On February 23, 2022, Plaintiff's doctor provided a "Ambulatory Work/School Release" document limiting Plaintiff's work as follows: "Limit [Plaintiff] to normal work-hours. Restricted against 'after hours' work until reevaluation. Will need regular breaks to ambulate." (Doc. No. 18-5). The document stated that Plaintiff and her work limitations would be re-evaluated in four weeks. Id.

On February 24, 2022, Plaintiff emailed her supervisor a copy of the Ambulatory Work/School Release document. (Doc. No. 14-2 ¶¶ 18-19). On that day, Plaintiff met with Defendant's Director of Operations Tom Weidman and Office Manager Melissa Strife about the Ambulatory Work/School Release document and related limitations. (Doc. No. 14-2 ¶ 20; Doc. No. 18-6). Weidman and Strife informed Plaintiff that working outside normal business hours was part of the normal duties of the service manager position such that she could not perform her role without working after hours. (Doc. No. 18-6; Doc. No. 13-5 at 108:12-15; Doc. No. 14-2 ¶ 21). As such, they said, Defendant would place Plaintiff on a four-week unpaid leave. (Doc. No. 18-6; Doc. No. 13-5 at 108:12-15; Doc. No. 14-2 ¶ 21). During the meeting, Plaintiff informed Weidman and Strife that placing her on unpaid leave and denying her the ability to work regular hours was, she believed, illegal and discriminatory. (Doc. No. 18-6). She also mentioned during the meeting, "potentially working from home," which Weidman and Strife quickly denied as not an option, without further discussion. Id. Ultimately, the conversation ended when Plaintiff stated, "So this is all semantics. And I am telling you, if you do not allow me to work from 8:00 to 5:00

we're going to have some problems." (Doc. No. 18-6; Doc. No. 14-2 ¶ 22). Weidman then responded, "So I'm gonna do this. I'm just gonna let you go based on the fact of at-will state and your attitude. So you can pack up your stuff and get off and leave totally. Our lawyers are completely prepared to take on whatever you might bring on to us. Okay." (Doc. No. 18-6).

After being terminated, Plaintiff began new employment with South Point Family Dentistry on March 21, 2022, as a receptionist earning $19 an hour. (Doc. No. 14-3 ¶ 3). Plaintiff was terminated from this position during the week of June 14, 2022. (Doc. No. 14-3 at ¶ 4; Doc. No. 14-4 at 154:7-25). After Plaintiff's daughter was born, she began working as a virtual medical transcriptionist in October 2022, where she is employed making $12 an hour. (Doc. No. 14-4 at 151:1-14).

### 4. Plaintiff's Pay

Defendant determined and paid Plaintiff as an exempt employee under the FLSA. (Doc. No. 17-1 ¶ 9). According to Defendant's owner, Plaintiff was absent 22 days due to sickness and Defendant deducted pay from Plaintiff's pay on nine of those days because Plaintiff was not eligible to participate in sick leave under company policy. Id. ¶ 6. A former service administrator employed by Defendant, Carlina Fancher-Ezemaduka, provided a declaration stating that Defendant paid employees "on an hourly basis plus commission" and that the "only people who were truly paid on a salary basis were management and leadership." (Doc. No. 20-1 ¶¶ 3-6). Additionally, Destiny Vann, a former employee whose role is disputed but at least had some Human Resources functions, claims that Defendant "deducted pay from [salaried] employee paychecks if they attended a 30 - 45 minute appointment." (Doc. No. 20-2 ¶¶ 3, 6; Doc. No. 17-1 ¶ 8). Vann informed the Plaintiff that, in her belief, Defendant was making improper deductions from Plaintiff's paychecks. Id. at ¶ 6. During discovery, Defendant provided information

regarding deductions from Plaintiff's pay, but only revealed eight instances in which pay was deducted, which appear to also include half days as follows:

```
11/29 - out sick - unpaid

11/25 - out sick - unpaid

11/30 - out sick - unpaid

12/1 - out sick - unpaid

12/28 - ½ day - unpaid

12/30 - ½ day - unpaid

2/21 - Dr. appointment - unpaid

2/23 - out sick - unpaid
```

(Doc. No. 20-3 ¶ 18).

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–159 (1970)). Courts considering summary judgment construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. Desmond v. PNGA Charles Town Gaming, LLC, 564 F.3d 688, 691 (4th Cir. 2009).

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Id. at 568 (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). "The court therefore cannot weigh the evidence or make credibility determinations." Id. at 569 (citing Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007)). The question posed at summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Defendant asks the Court to grant summary judgment in its favor on all of Plaintiff's claims. Plaintiff asks the Court to grant partial summary judgment in her favor on her FLSA claim.[1]

---

[1] While Plaintiff's Motion for Summary Judgment itself states that she "hereby moves this Court for summary judgment in her favor for each of her claims against Defendant," (Doc. No. 13 at 1), Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment only references Count V and states she "respectfully requests that this Court enter an award granting summary judgment in her favor and against Defendant on Count V." (Doc. No. 13-1 at 5). Accordingly, because Plaintiff has not argued for summary judgment on any other claims, the Court only considers her request for summary judgment on her fifth claim under the FLSA.

## A. Reasonable Accommodation Under the Americans with Disabilities Act

Plaintiff's first claim alleges that Defendant failed to provide a reasonable accommodation in violation of the ADA.  (Doc. No. 1 ¶¶ 36-47).

"The ADA prohibits employers from 'discriminat[ing] against a qualified individual on the basis of disability.'" Cowgill v. First Data Techs., Inc., 41 F.4th 370, 378 (4th Cir. 2022) (quoting 42 U.S.C. § 12112(a)).  To that end, the statute "requires employers to provide their disabled employees with reasonable accommodations that enable them to fulfill the essential duties of their positions." Kelly v. Town of Abingdon, Va., 90 F.4th 158, 166 (4th Cir. 2024) (citing 42 U.S.C. § 12112(b)(5)(A)).  "To survive summary judgment on such a claim under the ADA, a plaintiff must show (i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation." Tartaro-McGowan v. Inova Home Health, LLC, 91 F.4th 158, 165 (4th Cir. 2024) (quoting Cowgill, 41 F.4th at 378).  "If the plaintiff proves the elements of her failure-to-accommodate claim, the employer can yet avoid liability by showing 'that the proposed accommodation will cause undue hardship in the particular circumstances.'" Stephenson v. Pfizer, Inc., 641 F. App'x 214, 219 (4th Cir. 2016).

Defendant does not dispute for purposes of summary judgment that Plaintiff was disabled and that her employer had notice of her disability; therefore, the Court proceeds to the third and fourth elements of Plaintiff's ADA claim.  Tartaro-McGowan, 91 F.4th at 165 ("As below, Defendants do not contest that Tartaro-McGowan has satisfied the first two elements. So we proceed to the third and fourth elements.").

Plaintiff initially requested an accommodation to not work after hours for at least four weeks until she was reevaluated by her doctor.  Defendant argues that working after hours is an

essential function of the service manager position such that she could not perform the essential functions of the position by her request not to work after hours and so its offer to put Plaintiff on unpaid leave for four weeks was a reasonable accommodation.

"The third element [of a failure to accommodate claim under the ADA] requires a showing that the plaintiff can perform the essential functions of the position with a reasonable accommodation." Tartaro-McGowan, 91 F.4th at 165. "If the plaintiff cannot perform the essential functions of the job, with or without a reasonable accommodation, then she is not a 'qualified individual' under the ADA and therefore has no legal entitlement to an accommodation." Id. In considering this element then the Court must decide (1) whether Plaintiff could perform the essential functions of the job by not working after hours; and (2) if not, whether "any reasonable accommodation by the employer would enable [her] to perform those functions." Cook v. United Parcel Srv., Inc., No. 5:20-CV-00042-KDB-DSC, 2021 WL 2110883, at *5 (W.D.N.C. May 25, 2021) (quoting Tyndall v. National Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994)).

Not all job requirements or functions are essential. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015). "Instead, the functions of a job that are essential include only those 'that bear more than a marginal relationship to the job at issue.'" Stephenson, 641 F. App'x at 219-20 (quoting Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir.1994)). "Identifying the essential functions of a job requires a factual inquiry that is guided by several statutory and regulatory factors." Id. at 220. First, "[t]he ADA identifies two factors that inform whether a particular function is essential to a position:" (1) the employer's judgment of the essential functions must be considered; and (2) a written description, if any, prepared before advertising or interviewing applicants for the job. Id. (citing 42 U.S.C. § 12111(8)). The ADA's

implementing regulations also outline factors that inform the analysis including (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. Tartaro-McGowan, 91 F.4th at 165-66 (citing 29 C.F.R. § 1630.2(n)(3)); Stephenson, 641 F. App'x at 220. None of these factors are dispositive, not all are relevant in every case, and these factors are non-exhaustive. Stephenson, 641 F. App'x at 220.

"While 'reallocating or redistributing nonessential, marginal job functions' may be reasonable accommodation, an accommodation is not reasonable under the ADA if it 'reallocate[s] essential functions.'" Cook, 2021 WL 2110883, at *4 (internal citations omitted) (alterations in original). "[T]he ADA does not require an employer to reassign any of the essential functions of a disabled employee, nor does it require an employer to hire additional employees to perform an essential function." Stephenson, 641 F. App'x at 220 (citing Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997)). "Rather, the employer must accommodate a disabled employee only when an accommodation 'would enable the employee to perform all of the essential functions of her position.'" Id.

Here, the Court concludes that genuine issues of material fact exist as to whether after-hours work is an essential function of the service manager position. The multi-factor inquiry and Fourth Circuit case law guide the Court in reaching this conclusion. While Defendant undoubtedly believes that after-hours work is an essential function of the service manager position, Plaintiff disagrees that it is an essential function. (Doc. No. 14-2 ¶¶ 3-5, 7-8, 25; Doc. No. 13-5 at 111:5-

114:7).  Further, the parties have not provided a written job description, postings, or advertisements prepared before Plaintiff was hired for the service manager position.  Defendant relies on Plaintiff's offer letter which states, "weekend work and emergency work will be required at specific times with variable compensation."  (Doc. No. 14-2 at 8-9).  However, this alone is not dispositive, nor does it demonstrate with such certainty for the Court to conclude as a matter of law that after-hours work is an essential function of the job.  Indeed, "weekend work" and "emergency work" could, in some respects, be different than "after-hours" work.  For example, a non-emergency ticket assigned at the end of the day on a weekday might not be "weekend work" or "emergency work."  The remaining considerations do not move the needle enough to overcome these factual disputes on this issue because the additional evidence to which Defendant points only include Defendant's self-serving statements about the position and importance of the after-hours work, contrary to the non-moving Plaintiff's position.  (Doc. No. 14-2 ¶¶ 7, 21).  For example, neither party offers evidence from past or present service managers about after-hours work as a function of the position.  In sum, the Court concludes that genuine issues of material fact exist as to whether after-hours work is an essential function of the service manager position.

Given that issues of fact exist as to the service manager's essential functions, genuine issues of material fact similarly remain as to whether any reasonable accommodation by the Defendant would enable Plaintiff to perform the essential functions of the position and whether Defendant's offered accommodation to place Plaintiff on unpaid leave for four weeks was reasonable.  "This inquiry proceeds in two steps: (1) were the specific accommodations requested by [Plaintiff] reasonable; and (2) had [Defendant] granted the accommodation, could [Plaintiff] perform the essential functions of the position."  Cook, 2021 WL 2110883, at *7.  If after-hours work is not an essential function, Plaintiff's argument that Defendant could reassign after-hours work to be

covered by other service managers for four weeks might allow Plaintiff to complete the essential functions of the service manager role and might be a reasonable accommodation. Id. at *4. Plaintiff stated that she could otherwise work her normal hours in the office as usual. (Doc. No. 18-6).

Additionally, even assuming arguendo for purposes of this Motion only, that after-hours work is an essential function of the service manager role, Plaintiff mentioned in the February 24, 2022 meeting "potentially working from home." Id. Plaintiff argues this was a request for an alternative accommodation to not working after hours, but Weidman and Strife denied this option outright without further discussion or consideration, but had allegedly allowed other non-pregnant employees to work from home. Id. While Defendant points to Plaintiff's deposition testimony to dispute this argument that Plaintiff made an alternative request to work from home during the February 24, 2022 meeting, the Court finds genuine issues of material fact exist. A reasonable jury could conclude Plaintiff was requesting an alternative accommodation which Defendant refused to consider in the February 24, 2022 meeting. See also Jacobs, 780 F.3d at 581-82 (stating that failing to discuss a reasonable accommodation in a meeting in which the employer takes an adverse employment action against a disabled employee is evidence of bad faith). Last, because Defendant largely relies on the essential function of after-hours work and the importance of such after-hours work, for the same reasons as discussed above, genuine issues of material fact exist as to whether the requested accommodations would place an undue hardship on Defendant.

In sum, the Court concludes genuine issues of material fact exist as to Plaintiff's claim for failure to accommodate under the ADA. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's first claim for failure to accommodate is denied.

## B. Retaliation Claims Under the Americans with Disabilities Act and Pregnancy Discrimination Act

Plaintiff's second and fourth claims allege that Defendant retaliated against her by terminating Plaintiff for requesting an accommodation and complaining that Defendant's denial of her request for a reasonable accommodation was discriminatory. (Doc. No. 1 ¶¶ 48-57, 69-74).

The McDonnell Douglas framework applies to claims of retaliation when a plaintiff lacks direct evidence of retaliatory discrimination. Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Jacobs, 780 F.3d at 572-577; Laird v. Fairfax Cnty., Va., 978 F.3d 887, 892-93 (4th Cir. 2020); Young v. United Parcel Srv., Inc., 575 U.S. 206, 212-13 (2015). Under the three-step McDonnell Douglas framework, first, a Plaintiff must establish a prima facie case of discrimination or retaliation. Young, 575 U.S. at 213 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Next, if the Plaintiff succeeds in establishing a prima facie case, then the burden shifts to the Defendant to provide some legitimate, non-discriminatory reason for its employment decision. Id. Last, if the employer provides a non-discriminatory reason, the burden shifts back to the plaintiff to prove the reason is pretextual. Id.

To establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in protected activity; (2) her employer took an adverse action against her; and (3) a causal connection existed between the protected activity and the adverse action. Foster, 787 F.3d at 250; Laird, 978 F.3d at 892 n.4. Plaintiff has established a prima facie case of retaliation. Plaintiff engaged in protected activity by requesting an accommodation to not work after hours, and a potential alternative accommodation to work from home, for her pregnancy-related complications and also by complaining about what she believed was discriminatory conduct. Defendant took an adverse action against Plaintiff by terminating her. King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (stating plaintiff termination "indisputably constituted adverse employment action"). Defendant

does not appear to dispute these elements and instead disputes that Plaintiff can show causation. However, the temporal proximity between Plaintiff's protected activity and the adverse action, which occurred the same day, alone here, is sufficient to show causation for a prima facie case of retaliation. Id. at 151 & n.5 (finding that a two-and-a-half month time between protected activity and termination was sufficient to establish causation prong of the prima facie case). In addition, as discussed below with respect to pretext, Plaintiff points to other evidence, when considered along with the temporal proximity, is sufficient to establish causation.

Next, Defendant offers a legitimate, non-discriminatory reason for terminating Plaintiff. Specifically, according to Defendant, Plaintiff was terminated because she was "insubordinate, hostile and disrespectful in her communication," "threatened" Weidman and Strife, and "her ongoing poor attitude" and "insubordinate behavior." (Doc. No. 14-2 ¶¶ 22-23).

Thus, the burden shifts back to Plaintiff to establish that Defendant's explanation is merely pretext for retaliation. To do this, Plaintiff "must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation." Waag v. Sotera Defense Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017). Plaintiff has done so here.

First, while not sufficient alone to establish causation when considering pretext, the temporal proximity between Plaintiff's protected activity and the adverse action, which occurred on the same day, is relevant evidence to demonstrate Defendant's explanation is merely pretext. In addition, during the February 24, 2022 meeting, Defendant's stated reason for terminating Plaintiff during was "at-will state and [Plaintiff's] attitude." (Doc. No. 18-6). However, Plaintiff's "attitude" directly involved Plaintiff's protected activity and specifically complaining of action that she believed was discriminatory such that a reasonable jury could conclude this evidence tends

to demonstrate retaliation. Further, while Defendant claims that Plaintiff had ongoing issues including insubordination and a poor attitude and demeanor, neither Weidman nor Strife stated such in the February 24, 2022 meeting, and the PIP appears to largely reflect performance issues related to customer requests but does not mention insubordination. (Doc. No. 18-4). The PIP mentions "attitude awareness" with respect to complying with job requests from customers, not internal communication. Id. at 2. There is also no evidence that Plaintiff failed to successfully complete the PIP, was disciplined for unsuccessful completion, or was placed on further formal performance-related plans. Moreover, Plaintiff's mention of "potentially working from home" in the February 24, 2022 meeting, was immediately denied without further discussion or questioning as to whether it was a request for an alternative accommodation to not working after hours or any further discussion otherwise. But Plaintiff presents evidence that other service managers who were not pregnant were afforded the opportunity to work from home. (Doc. No. 20-1 ¶ 8; Doc. No. 20-2 ¶¶ 8-10); see also Jacobs, 780 F.3d at 581-82 (failing to discuss a reasonable accommodation in a meeting in which the employer takes an adverse employment action against a disabled employee is evidence of bad faith in the failure to accommodate context). Plaintiff also includes evidence that another former employee believes she was terminated "for attempting to assisting [Plaintiff] in asserting her rights." (Doc. No. 20-2 ¶ 11). Considering all of these in combination, the Court concludes that genuine issues of material fact exist and a reasonable jury could conclude that Defendant's proffered legitimate, non-discriminatory reason for terminating Plaintiff was not the actual reason for terminating her, and that Defendant's reason for terminating Plaintiff was to retaliate against her for requesting accommodations and/or complaining about what she believed were discriminatory actions.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's second and fourth

claims for retaliation is <u>denied</u>. The Court does not decide these factual disputes but concludes there are sufficient material facts in dispute to go to a jury.

## C. Discrimination Claim Under the Pregnancy Discrimination Act

Plaintiff's third claim alleges that Defendant discriminated against her in violation of the Pregnancy Discrimination Act by denying Plaintiff's request to work from home despite allowing other similarly situated employees to work from home in the past. (Doc. No. 1 ¶¶ 58-68).

Title VII provides that an employer shall not "discriminate against any individual . . . with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." <u>McKinney v. Cleveland Cnty. Bd. of Educ.</u>, No. 3:20-cv-221-MOC-DSC, 2022 WL 895928, at *7 (W.D.N.C. Mar. 25, 2022) (quoting 42 U.S.C. § 2000e–2(a)(1)). The Pregnancy Discrimination Act expanded the scope of discrimination such that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . ." <u>Id.</u> (quoting 42 U.S.C. § 2000e(k)); <u>Young v. United Parcel Srv., Inc.</u>, 575 U.S. 206, 210 (2015). Like other Title VII discrimination claims, in the absence of any direct evidence of pregnancy discrimination, the Court applies the <u>McDonnell Douglas</u> burden shifting framework. <u>Young</u>, 575 U.S. at 212-13. "[A] plaintiff alleging that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act's second clause may make out a prima facie case by showing, as in <u>McDonnell Douglas</u>, that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" <u>Young</u>, 575 U.S.

Plaintiff has established a prima facie case. Plaintiff was pregnant. As discussed in Section III.A, she presented evidence sufficient to make a prima facie showing and create a genuine issue of material fact that she requested an accommodation to work from home at the February 24, 2022 meeting. Defendant denied her request to work from home in the February 24, 2022 meeting without further discussion. Last, Plaintiff points to evidence that Defendant allowed other non-pregnant service managers to work from home. (Doc. No. 20-1 ¶ 8; Doc. No. 20-2 ¶¶ 8-10). Defendant does not offer a legitimate, non-discriminatory reason as to why it denied Plaintiff's request to work from home other than its argument, based on its view of the facts, that Plaintiff did not request an accommodation to work from home and that working from home would not resolve the doctor's request that she not work after hours. Defendant does provide a legitimate, non-discriminatory explanation for terminating Plaintiff, as discussed above in Section III.B. But even assuming arguendo Defendant provides a legitimate, non-discriminatory explanation for denying Plaintiff's request for an accommodation to work for home, for the reasons discussed in Section III.B., Plaintiff has produced sufficient evidence to create a genuine dispute of material fact as to whether such reason is pretextual. A reasonable jury could conclude Defendant treated Plaintiff differently than non-pregnant employees in denying her an accommodation to work from home.

The Court observes that the parties largely argued about Plaintiff's Pregnancy Discrimination Act claim based on Defendant terminating Plaintiff. However, Plaintiff's Complaint did not bring this claim (Count III) on a theory of wrongful termination, but rather as a disparate treatment claim based on her request for an accommodation to work from home. (Doc. No. 1 ¶¶ 58-68). This claim does not even allege Plaintiff was terminated, but rather placed on unpaid leave. Id. ¶ 66. Plaintiff has not moved to amend her Complaint and the Court will not

allow Plaintiff to now bring a new theory of this claim that is not alleged in her Complaint at this stage in the proceedings.

Despite this, genuine issues of material fact exist as to whether Defendant discriminated against Plaintiff in violation of the Pregnancy Discrimination Act when it denied her request to work from home that it afforded to other service managers. Accordingly, Defendant's motion for Summary Judgment as to Plaintiff third claim under the Pregnancy Discrimination Act is <u>denied</u>.

### D. Failure to Pay Overtime Wages in Violation of the FLSA

Both parties have filed Motions for Summary Judgment as to Plaintiff's fifth claim under the FLSA. Plaintiff's fifth claim alleges that Defendant failed to pay Plaintiff overtime wages in violation of the FLSA when it classified her as a salaried employee but treated her as an hourly employee by deducting pay from her paychecks. (Doc. No. 1 ¶¶ 75-81).

"The FLSA is 'best understood as the minimum wage/maximum hour law.'" <u>U.S. Dep't of Lab. v. Fire & Safety Investigation Consulting Srvs., LLC</u>, 915 F.3d 277, 280 (4th Cir. 2019) (quoting <u>Trejo v. Ryman Hosp. Props., Inc.</u>, 795 F.3d 442, 446 (4th Cir. 2015)). "As part of its overtime protections, the FLSA requires that covered employers pay their employees 'at a rate not less than one and one-half times the regular rate at which [they are] employed' for any hours worked in excess of 40 hours per workweek." <u>Id.</u> (quoting 29 U.S.C. § 207(a)(1)). "Among the employees exempt from this overtime pay requirement are persons 'employed in a bona fide executive, administrative, or professional capacity' ("the administrative exemption")." <u>Desmond v. PNGI Charles Town Gaming, LLC</u>, 564 F.3d 688, 691 (4th Cir. 2009) (quoting 29 U.S.C. § 213(a)(1)).

There is a three-part test for determining whether an employee is subject to the administrative exemption: (1) the employee must be compensated at a salary rate of not less than

$684 per week ($35,568 annually); (2) the employee's primary duty must consist of the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. Id. (quoting 29 C.F.R. § 541.200); 29 C.F.R. § 541.200; 29 C.F.R. § 541.600 (2020).

> (a) . . . . The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
>
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201. "[T]he critical focus regarding this element remains whether an employee's duties involve the running of a business, as opposed to the mere day-to-day carrying out of the business's affairs." Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 123 (4th Cir. 2015) (internal citations, quotations, and alterations omitted).

If an employee is exempt, an employer that makes improper deductions from their salary may lose the exemption "if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603; 29 C.F.R. § 541.602. Employers may properly deduct

from an exempt employee's pay, among other reasons, if the employee "is absent from work for one or more full days for personal reasons, other than sickness or disability." 29 C.F.R. § 541.602. Deductions may also be made for full-day absences "occasioned by sickness or disability . . . if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability." 29 C.F.R. § 541.602(b)(2). An employer cannot make reductions for part-day absences. Shockley v. City of Newport News, 997 F.2d 18, (4th Cir. 1993). Employees also will not lose exempt status if employers have a policy and complaint mechanisms for improper deductions and reimbursement to employees for improper deductions. 29 C.F.R. § 541.603(d).

"Application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." Brown v. Serenity C & C, Inc., 391 F. Supp. 3d 546, 553 (E.D. Va. 2019) (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)). An employer claiming the administrative exemption bears the burden of proving by clear and convincing evidence that a former employee's job fell within the administrative exemption. Desmond, 564 F.3d at 691. "FLSA exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'" Id. at 691-92 (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

According to Defendant, Plaintiff was exempt from overtime protection under the administrative exemption. (Doc. No. 14-1 at 18). Plaintiff's salary of $38,000 meets the first element. However, the evidence is not clear at this stage as to whether Plaintiff's primary duty consisted of "work directly related to the management or general business operations" of Defendant or its customers. In addition, several issues of fact remain regarding Defendant's

deductions from Plaintiff's pay. For example, Defendant's owner and president Bradley M. Scorse submitted an affidavit stating Plaintiff was absent for 22 days during the initial 90 days of her employment due to sickness, and Defendant deducted pay from nine of those days because Plaintiff was not eligible to participate in the sick leave plan. (Doc. No. 17-1 ¶ 6). But, contrary to Scorse's affidavit, in discovery Defendant produced a log of dates in which Plaintiff's pay was deducted which only contained eight deductions, rather than nine. (Doc. No. 20-3 at 8). Of these eight occasions, five were attributed to sick leave, two days state "1/2 day" without further explanation, and one day states "Dr. appointment" without further explanation. Id. Issues of fact also remain as to whether Plaintiff made a complaint to Defendant about deductions from pay and what, if anything, Defendant did in response.

In sum, genuine issues of material of fact exist as to whether Plaintiff was exempt from overtime protection under the administrative exemption. Accordingly, both parties' Motions as to Plaintiff's fifth claim for violations of the FLSA are denied.

### E. Damages

Finally, Defendant makes various arguments with respect to damages to which it contends Plaintiff is not entitled. These arguments all hinge on factual issues in dispute, and which, for the reasons discussed herein, are premature at this stage. Accordingly, Defendant's Motion with respect to excluding various types of damages is denied.

## IV. ORDER

**FOR THE FOREGOING REASONS, IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. No. 14) is **DENIED**. The parties are **ORDERED** to meet and confer no later than thirty (30) days from the date of this Order and report to the Court, through a joint

submission, no later than forty-five (45) days from the date of this Order on whether this action may be resolved. Upon the filing of the parties' joint submission, if the parties are unable to reach resolution or request a stay related to the same, the Court will promptly set this matter for a new trial date.

The Clerk is directed to send copies of this Order to counsel for the parties.

**SO ORDERED**.

Signed: September 27, 2024

Susan C. Rodriguez
United States Magistrate Judge